UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA A. DUFFIELD,

        Plaintiff,

vs.

Case No. 03-CV-74823
HON. GEORGE CARAM STEEH

THE GUIDANCE CENTER,

        Defendant.
_____/

OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#14)

Defendant The Guidance Center moves for summary judgment of plaintiff Barbara Duffield's claims of interference with rights protected by the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq., discharge in violation of the FMLA, and wrongful discharge in violation of public policy. A hearing on the motion was held on May 24, 2005. For the reasons set forth below, defendant's motion for summary judgment will be DENIED.

I.  Background

Plaintiff Barbara Duffield, Ph.D., filed a complaint on November 26, 2003 alleging she was employed by defendant The Guidance Center as a Supervisor and Early Childhood Specialist when, in 2001, she became "ill at different times" with stress, hypertension, chest pains, respiratory difficulties, and a broken foot. Plaintiff alleges that defendant was on notice that she was suffering from serious health conditions as defined by the FMLA, but that defendant informed her in June 2001 that she was ineligible for FMLA leave, terminating plaintiff's employment less than six months later on November 27, 2001 for absenteeism. Count I alleges defendant violated the FMLA by counting qualified FMLA absences against plaintiff for purposes of discipline and termination, failing to restore plaintiff to her position upon her returning from qualifying FMLA leave, failing to maintain plaintiff's employee benefits, and discharging plaintiff in retaliation for engaging in FMLA

protected activity. Count II alleges plaintiff was discharged in violation of public policy in that she was transferred out of an AFSCME Union job after complaining that she was not being paid at the collective bargaining agreement rate and was thereafter excluded from management meetings and eventually discharged in retaliation for her former AFSCME Union involvement.

## II. Record Evidence

Plaintiff proffers several "Release Slips" signed by treating physician Dr. Judith Schoonmaker, indicating plaintiff's inability to work for a specific time period: (1) January 8, 2001 Release Slip, stating plaintiff is unable to work from January 8, 2001 through January 10, 2001 due to "newly diagnosed hypertension + chest pain - may be related to stress"; (2) January 12, 2001 Release Slip, stating plaintiff is unable to work from January 8, 2001 through January 15, 2001, with cause unnoted; (3) June 13, 2001 Release Slip, stating plaintiff is unable to work from June 8, 2001 through June 22, 2001 because plaintiff is "undergoing testing for cardiac problem"; (4) June 22, 2001 Release Slip, stating plaintiff is unable to work from June 22, 2001 through July 9, 2001 in that plaintiff "will have finished testing + recovery by above date," and; (5) November 9, 2001 Release Slip, stating plaintiff is unable to work from November 4, 2001 through "at least" November 12, 2001 because plaintiff "went to ER on 11-4-01 and was diagnosed with a stress disorder. She is now in physical pain from muscle spasms in the neck and significant anxiety that she is physically ill." Plaintiff's April 11, 2005 Exhibit 4. Plaintiff also proffers Dr. Schoonmaker's "Progress Notes," dated January 8, 2001, January 11, 2001, February 9, 2001, June 13, 2001, June 22, 2001, August 1, 2001, and November 9, 2001. Id. Plaintiff further proffers a November 21, 2001 letter from Dr. Garth Phibbs to Dr. Schoonmaker indicating Dr. Phibbs' medical evaluation of plaintiff. Id.

Plaintiff testified that in late June 2001, sometime after June 22, 2001, she went into

2

work and met with defendant's Human Resources ("HR") Director Tracey Schultz:

> A. (by Plaintiff): Her [Tracy Schultz's] door was open. I tapped on the metal framework, and she -- she was facing her computer with her back to the door. And she turned around and said, "Hi, Barb." And I said "Hi, Tracey. Could you talk to me for a few minutes?" She said, "Sure. What can I do for you?" I sat down in a blue chair and said," Tracy, my doctor feels that I need some time off to regain my health, and I would like to know how to apply for a family medical leave."
>
> Q. Say that again. You said what?
>
> A. "My doctor thinks I need some time off to regain my health, and I would like to know how to apply for a family medical leave."
>
> Q. Did you say anything else before she spoke?
>
> A. I may have eluded to my absences. I knew they were unhappy with my absences, and I really couldn't help it.
>
> \*      \*      \*
>
> Q. What did she do after you said these words?
>
> A. She said to me "Do you have someone who's sick that you need to care for?"
>
> Q. What did you say?
>
> A. I said "Yes."
>
> Q. What happened after that?
>
> A. She said "Who"?
>
> Q. Then what?
>
> A. I said "me." She said, "That doesn't count."
>
> \*      \*      \*
>
> Q. What happened after that?
>
> A. I said, "Why not?" She said, "You're just not eligible. That doesn't count." And I said -- and I accepted it and left.
>
> \*      \*      \*
>
> Q. How long did the meeting last?

3

> A. No more than 5 minutes.
>
> Q. So after you said that, she said, "You're not eligible. It doesn't count." Then did you say anything?
>
> A. I said "Okay."
>
> Q. Did you argue?
>
> A. No. I didn't argue with her.
>
> \* \* \*
>
> Q. And that's the one time where you requested the Family Medical Leave Act leave . . .
>
> A. Yes.
>
> \* \* \*
>
> Q. She's the only person that you requested it of?
>
> A. Yes.

Plaintiff's September 28, 2004 Deposition Transcript, at 34-36. HR Director Schultz testified as to her own belief that, unless in a "coma" or otherwise incapacitated, an employee must specifically ask for "FMLA leave" to trigger FMLA protections. Schultz September 15, 2004 Deposition Transcript, at 7-9.

Plaintiff's former supervisor Regina McKinney mailed a November 8, 2001 letter to plaintiff outlining perceived deficiencies in plaintiff's work, and also drawing attention to plaintiff's prior absences:

> [Y]our time sheets indicate that you have worked a full two-week pay [period] without absences only twice within the past 21 pay periods.

Plaintiff's April 11, 2005 Exhibit 12. Plaintiff testified that she was thereafter called to a November 29, 2001 meeting with McKinney and Schultz. Plaintiff's September 28, 2004 Deposition Transcript, at 135-136. According to plaintiff, Schultz told her that the purpose of the meeting was to help plaintiff "be more productive." Id. at 136-137. Plaintiff was given

4

a copy of a list of responsibilities entitled "Position Description," covering plaintiff's position of "Education Specialist/Supervisor." Id. at 139. See also Defendant's March 17, 2005 Exhibit 9 ("Position Description" list). Plaintiff testified that the list accurately reflected her job functions through the date of her discharge. Plaintiff's September 28, 2004 Deposition Transcript, at 139-140. Of the items on the list numbered 1-23, plaintiff testified:

> Q. Did you agree at this meeting to continue performing all of numbers 1 through 23?
>
> A. (by Plaintiff) Well, I don't know that I used those words, and I -- I wasn't writing on this document.
>
> Q. Understood.
>
> A. I had my own document. My impression, in retrospect, of this paper in the context of this meeting that you're talking about, was that we never covered all of these. And Tracey [Schultz] said that she was very aggravated that this meeting had taken so long. And I said to her "Well, that's because you never expected me to participate in it." And she said that this meeting was unnecessarily long, and she was calling an end to it and we would meet again. So -- you see. I'm inclined to think that we never finished all of these. But they're checked, and there's nothing that I would object to on here looking at it now -- flexible work hours. Who in the world would object to that?

Id. at 141-142. Plaintiff continued by testifying that, after leaving the meeting room, she told McKinney and Schultz that she needed to turn in her time-sheet because she would not be in the next day, a Friday, when the document was due. Id. at 142-144. Plaintiff could not recall whether she gave a reason for why she would not be in the next day. Id. at 144, 148. According to plaintiff, Schultz walked away for a moment, and when she returned, Schultz told plaintiff "you're terminated." Id. at 146. Later, in a December 5, 2001 letter, Schultz notified plaintiff that she was terminated effective November 29, 2001. Plaintiff's April 11, 2005 Exhibit 13.

### III. Argument

Defendant argues that plaintiff's brief June 2001 meeting with Schultz failed to put

5

defendant on notice that plaintiff was requesting FMLA leave because plaintiff did not identify her illness, did not ask for a specific time-period of leave, and did not submit a certification under 29 C.F.R. § 825.306(4) that she was unable to perform her essential job functions. Defendant cites 29 C.F.R. § 825.312(b) to support its argument that plaintiff's failure to produce § 825.306(4) certification demonstrates plaintiff's leave was not qualifying FMLA leave. Defendant asserts that, to the contrary, plaintiff testified that she was able to perform all of her job functions up through the day she was discharged. Defendant continues to argue that it is undisputed that plaintiff received a copy of defendant's FMLA policy, and admitted that she had never read it nor requested FMLA leave in writing. Defendant maintains that, because plaintiff did notify defendant that she was requesting FMLA leave, defendant cannot be found to have terminated plaintiff in violation of the FMLA. Rather, defendant asserts it is beyond reasonable dispute that plaintiff was terminated for insubordination and poor work performance. Defendant proffers evidence that plaintiff used paid sick leave from June 11 through June 15, 2001, and from July 2 through July 6, 2001, was granted permission to use accrued paid vacation time, and had unused paid vacation leave, sick leave, and personal leave remaining at the time she was discharged.

## IV. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

6

must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## V. FMLA

Under the FMLA, it is unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA or FMLA regulations, or to discharge or otherwise discriminate against an employee for opposing a practice made unlawful by the FMLA and its regulations. 29 U.S.C. 2615(a)(1-2); Cavin v. Honda of America Mfg., 346 F.3d 713, 719 (6th Cir. 2003). To prevail on an FMLA "interference" claim, the plaintiff must prove: (1) she was an FMLA "eligible employee"; (2) the defendant is an FMLA "employer"; (3) the employee was entitled to FMLA leave; (4) the employee gave the employer notice of the intention to take leave, and; (5) the employer denied the employee FMLA benefits to which she was entitled. Cavin, 346 F.3d at 719. Recovery of damages on an "interference" claim requires a showing that the employee was prejudiced

7

by the "interference" violation, that is, that the employee lost compensation or benefits by reason of the FMLA violation, sustained monetary losses as a "direct result" of the violation, or is entitled to equitable relief such as reinstatement. Cavin, 346 F.3d at 726 (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-89 (2002) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I-II) and 29 U.S.C. § 2617(a)(1)(B)).

The FMLA likewise prohibits an employer from discharging an employee for exercising rights protected by the FMLA. See 29 C.F.R. § 825.220(c) (stating: "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions"). A prima facie FMLA retaliatory discharge claim requires proof that: (1) the employee availed himself of an FMLA protected right; (2) she was discharged, and; (3) a causal connection between the employee's protected activity and the discharge decision. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001) (citing Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)). If the employee relies solely on indirect evidence to support an FMLA claim, a district court may apply a McDonnell-Douglas[1] burden-shifting analysis. Skrjanc, 272 F.3d at 315 (citing Hodgens, 144 F.3d at 161). That is, if the employee first establishes a prima facie FMLA retaliatory discharge claim, the employer then has the burden of articulating a legitimate reason for the discharge. Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003). If the employer's burden is met, the plaintiff must show that the employer's proffered legitimate reasoning for the discharge was in fact pretextual, and that unlawful discrimination was the real reason for the discharge. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153-154 (2000) for the proposition that establishment of a prima facie case and sufficient evidence of pretext may permit the trier of fact to find unlawful discrimination). "[A] termination based only in part on an absence covered by the

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

FMLA, even in combination with other absences, may still violate the FMLA." Cavin, 346 F.3d at 726 (quoting Barnett v. Revere Smelting & Refining Corp., 67 F.Supp.2d 378, 388 (S.D.N.Y. 1999)). Conversely, if the employee cannot show that she was discharged because she took or attempted to take FMLA leave, or that her taking or attempting to take FMLA leave was a "negative factor" in the discharge decision, the employee cannot prove a violation of the FMLA. Pharakhone v. Nissan North America, Inc., 324 F.3d 405, 408 (6th Cir 2003) (internal quotation omitted).

To invoke FMLA protection against either an unlawful interference or retaliatory discharge, the employee must first, during her employment, request leave and give the employer notice that she is requesting leave for a serious medical condition that renders her unable to perform her job duties. Brenneman v. Medcentral Health System, 366 F.3d 412, 421 (6th Cir. 2004) (citing Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998)). The FMLA does not require the notice to be in writing. See 29 C.F.R. § 825.302(c) (governing "foreseeable" FMLA leave, and stating in part: "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave"); 29 C.F.R. § 825.302 (d) (governing "foreseeable" FMLA leave, and recognizing that an employee's "failure to follow such internal employer procedures [requiring written notice] will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice"), and; 29 C.F.R. § 825.303(a) (governing "unforeseeable" FMLA leave, and recognizing that "written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved").

> . . . [T]he eligible employee need not expressly mention the FMLA as the source of his right to request such leave. Hammon [v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999)]. Rather, *the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer*

9

> *of the employee's request to take leave for a serious health condition that rendered him unable to perform his job.* Brohm, 149 F.3d at 523; Cavin [346 F.3d at 725] (holding that the plaintiff, as a matter of law, had sufficiently notified his employer during his employment that his request for unforeseeable leave was for a FMLA-qualifying serious health condition when he informed his employer that he had been at the hospital and was unable to work due to an injury from a motorcycle accident).
>
> The eligible employee must also give the employer this substantive notice within the requisite time frame. When the eligible employee's leave for his serious health condition is foreseeable based upon planned medical treatment, he must "provide the employer with not less than 30 days' notice, before the date the leave is to begin." See 29 U.S.C. § 2612(e)(2)(B) (excluding a situation in which "the date of treatment requires leave to begin in less than 30 days" and requiring the eligible employee, in such a situation, to "provide such notice as is practicable").  In contrast, when the approximate time of the needed leave is unforeseeable, the eligible employee should give the employer notice of the need for the leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). "It is expected that an employee will give notice to the employer within no more than one or two workings days of learning of the need for leave, except in extraordinary circumstances ... [in which] such notice is not feasible." Id.
>
> *Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA.*  Hammon, 165 F.3d at 450.  An employer may require the eligible employee to provide, in a timely manner, certification by a health care provider. 29 U.S.C. § 2613(a).  Where the leave is due to a serious health condition of the employee that prevents him from performing his job, the requested certification is sufficient if it states the date upon which the serious health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the health care provider's knowledge, and a statement that the employee is unable to perform his position's duties. 29 U.S.C. § 2613(b).

Brenneman, 366 F.3d at 421-422 (emphasis added).

The issue of adequate notice under the FMLA is a mixed question of fact and law.

> [T]he question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact. However, the question of whether the notice satisfied the statutory requirement is one of law.

Cavin, 346 F.3d at 723 (quoting K & M Joint Venture v. Smith Int'l, Inc., 669 F.2d 1106, 1111 (6th Cir. 1982)).  For purposes of summary judgment, the court must determine whether, viewing the facts in a light most favorable to the employee, the employee

10

complied with the FMLA's notice requirements as a matter of law. Cavin, 346 F.3d at 723.

## VI. Analysis

### A. FMLA Interference Claim

Construing plaintiff's testimony regarding her late June 2001 meeting with defendant's HR Director Schultz in a light most favorable to plaintiff, plaintiff complied with the FMLA notice requirements as a matter of law when she conveyed to Schultz that "[m]y doctor thinks that I need some time off to regain my health, [] I would like to know how to apply for a family medical leave," and the person who is sick that needs care is "me." Plaintiff's September 28, 2004 Deposition Transcript, at 34-35.  Cavin, 346 F.3d at 723; Brenneman, 366 F.3d at 421-422.  Even without a specific description of a serious health condition that rendered plaintiff unable to perform her job, Schultz was apprised that plaintiff was seeking FMLA leave, as demonstrated by Schultz's response that plaintiff was "just not eligible" because plaintiff's own health need, as opposed to a family member, "doesn't count." Plaintiff's September 28, 2004 Deposition Transcript, at 35.  Once Schultz was apprised of plaintiff's FMLA leave request, it was incumbent upon defendant to gather additional information needed to *properly* assess whether the requested leave fell within the FMLA, for example, by asking plaintiff to provide certification from a health care provider that plaintiff's specified illness prevented plaintiff from performing her job duties. Brenneman, 366 F.3d at 421-422.  Defendant's argument that the June 2001 conversation failed to put defendant vis-a-vis Schultz on notice the plaintiff was asking for FMLA leave because plaintiff did not identify her illness, ask for a specific leave period, or submit certification under 29 U.S.C. § 825.306(4) or 29 U.S.C. § 825.3312(b) fails to recognize the salient point of plaintiff's testimony – plaintiff did not provide this information because HR Director Schultz immediately denied the "family medical leave" request after determining plaintiff was "just not eligible."  With respect to "foreseeable" FMLA leave:

> . . . . The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave (see § 825.305).

29 C.F.R. § 825.302(c). With respect to "unforeseeable" FMLA leave:

> . . . . The employer will be expected to obtain any additional required information through informal means.

29 C.F.R. § 825.303(b). Under the circumstances as described by plaintiff, Schultz owed a minimal duty of asking plaintiff for additional information before summarily denying the request. 29 C.F.R. § 825.302(c); 29 C.F.R. § 825.303(b); Brenneman, 366 F.3d at 421-422.

This point alone distinguishes the cases relied upon by defendant for the proposition that plaintiff failed to provide specific information about her illness or the duration of her requested leave. See Reich v. Midwest Plastic Engineering, Inc., No. 1:94-CV-525, 1995 WL 478884, at *1-*2, *7 (W.D. Mich. June 6, 1995) (*proceeding to trial* on FMLA leave notice issue where employee left phone message that she had been to emergency room believing she had chicken pox, and would be going to her doctor the next day; called the next day and told her supervisor she had chicken pox and would bring in a doctor's slip, and; three days later employee's husband talked to supervisor who asked without success that employee call him immediately); Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980 (5th Cir. 1998) (finding lack of FMLA leave notice where only information provided to employer prior to termination for absenteeism was a note from employee's mother stating the employee "was having a lot of pain in her side" and would not be able to work that day but would make the time up on her day off); Bulmer v. Yellow Freight Systems, Inc., No. 99-9252, 2000 WL 637066, at ** 1-2 (2nd. Cir. May 16, 2000) (finding lack of FMLA leave

12

notice *following a bench trial* where absent employee's wife told supervisor that employee was "depressed and not feeling well," employee was warned that he would be fired if he did not return to work, wife informed employer that employee was "too sick to come to the telephone," supervisor left two phone messages on employee's answering machine, employee received a letter that he would be fired in seven days for absenteeism if he did not provide "immediate proof of illness," and employee first requested FMLA leave two weeks after being discharged); Cool v. BorgWarner Diversified Transmission Products, Inc., No. IP02-0960-CBS, 2004 WL 253252, at *1-3 (S.D. Ind. Jan. 12, 2004) (finding lack of FMLA notice where employee initially asked for time off to care for her grandchildren while her son was at sea and stated she would resign if her request was not granted; request was initially denied and employee was asked to resubmit request in writing, employee wrote she needed three months leave and that her resignation would be effective three days later if her request was denied while leaving a voicemail stating she wanted FMLA leave; employer stated it had already accepted resignation; employee was thereafter given FMLA leave paperwork; employee provided note from grandchildren's physician and certification two weeks later, and; employer thereafter denied FMLA leave based on this submitted information); Henson v. Bell Helicopter Textron, No. Civ.A.4:01-CV-1024-Y, 2004 WL 238063, at *11 (N.D. Tex. Feb. 6, 2004) (finding lack of FMLA notice where employee accumulated excess absences after being told by employer that "they would work with him," employer was aware employee was suffering from depression, and employee admitted he had been absent for reasons other than depression); Henegar v. Daimler-Chrysler Corp., 280 F.Supp.2d 680, 686-687 (E.D. Mich. 2003) (finding lack of FMLA notice where employee used automated phone system to report to employer that he was absent because he was "ill," and never otherwise attempted to contact his supervisor or human resources department); Peeples v. Costal Office Products, Inc., No. 02-1848, 2003 WL

21019353, at **3-4 (4th Cir. May 7, 2003) (finding lack of FMLA notice where absent employee deliberately withheld information, and provided false information, regarding medical condition in response to employer's repeated requests for information).  None of the cases cited by defendant involve circumstances, as here, where an active employee who had not exhausted excused leave specifically requested information for taking "family medical leave" due to her own health problems, and the employer simply responded without attempting to garner additional information that the employee was "just not eligible."

The court does not read plaintiff's deposition testimony, as quoted herein regarding the 23 items set forth in her "Position Description," as an admission that plaintiff was never rendered unable to perform the 23 items by a serious medical condition.  See Plaintiff's September 28, 2004 Deposition Transcript, at 141-142.  At best, plaintiff agreed during a meeting designed to make her "more productive" that she was responsible for performing the items listed in the "Position Description."  Id.  The fact that plaintiff did not read her copy of defendant's internal policy manual does not defeat plaintiff's FMLA claims because "an employee need only comply with the requirements of the [FMLA] to invoke its protections." Calvin, 346 F.3d at 723.  Plaintiff was not required to submit a written request.  Id.; 29 C.F.R. § 825.302(c); 29 C.F.R. § 825.302 (d); 29 C.F.R. § 825.303(a).    The court's finding that defendant is not entitled to summary judgment as to  plaintiff's FMLA interference claim based on a lack of FMLA leave request notice does not, as plaintiff argued at the hearing, entitle plaintiff to summary judgment on the claim.  In addition to proving that defendant received notice of plaintiff's intent to take FMLA leave, plaintiff must also prove that she was denied FMLA leave to which she was in fact entitled, and that she lost compensation or benefits, or suffered other monetary losses, as a "direct result" of such a denial, or is otherwise entitled to equitable relief for a wrongful denial of FMLA

leave. Cavin, 346 F.3d at 719, 726. Whether plaintiff's June 2001 FMLA leave request was foreseeable or unforeseeable, defendant was entitled to reasonable notice of when the requested leave was asked to take effect. See 29 C.F.R. § 825.302 and 29 C.F.R. § 825.303. Plaintiff admittedly asked for "family medical leave" only once during her tenure with defendant, in the June 2001 meeting with HR Director Schultz. Construing the pleadings and evidence in a light most favorable to *defendant* in determining whether *plaintiff* is entitled to summary judgment, a reasonable jury could conclude on this record that leave taken by plaintiff prior to the June 2001 meeting with Schultz, supported by January and June 2001 Release Slips signed by Dr. Schoonmaker, did not qualify as FMLA leave for lack of *timely* notice that the leave be considered FMLA leave. See Brenneman, 366 F.3d at 421-422. While plaintiff also proffers a post-meeting November 9, 2001 Release Slip as proof of a "stress disorder" accompanied by "pain from muscle spasms in the neck and significant anxiety that she is physically ill," and Dr. Phibbs' November 21, 2001 medical evaluation to support a claim that she suffered from a serious medical condition that rendered her unable to perform her job after the June 2001 meeting, questions remain whether these medical conditions described by Drs. Schoonmaker and Phibbs were in fact so serious as to preclude plaintiff from performing her job and, again, whether defendant received *timely* notice of plaintiff's requests for FMLA leave due to these conditions.[2] Brenneman, 366 F.3d at 421-422.

---

[2] Assuming for purposes of this motion that defendant received notice that plaintiff was requesting FMLA leave for all sick leave she took after June 2001, plaintiff must still prove that defendant was given sufficient time to treat this leave as FMLA leave. See 29 C.F.R. § 825.302 (requiring 30 day notice or otherwise "as soon as practicable" for "foreseeable" FMLA leave), and 29 C.F.R. § 825.303 (requiring 1-2 days notice or otherwise "as soon as practicable" for "unforeseeable" FMLA leave). Whether plaintiff's sick leave requests after June 2001 were timely under the FMLA turns on the issue of whether the leave was "foreseeable" or "unforeseeable," an issue that has not been established beyond reasonable dispute. Requests for retroactive FMLA leave are, in the absence of further legal development, unlikely to qualify as FMLA leave requests for an otherwise "foreseeable" leave request.

Defendant's argument that plaintiff cannot prove she suffered direct damages from the denial of an otherwise timely notice of a request for FMLA leave because plaintiff used paid sick time, was given permission to use vacation time to cover sick leave, and had leave remaining at the time of her discharge, is not persuasive. Plaintiff could prove, for example, that all of the time she took off for a serious medical condition for which defendant had timely notice of FMLA leave requests would have been time she would have taken without pay under the FMLA if the request would have properly been granted, resulting in the accrual of still more paid sick leave, vacation time, and/or personal leave for which she was entitled to be compensated upon discharge. Plaintiff also may be able to prove that she suffered other direct pecuniary losses as the result of a wrongful denial of a timely request for FMLA leave. On this record, neither defendant not plaintiff is entitled to summary judgement as to plaintiff's FMLA interference claims because the evidence presents a sufficient disagreement to require submission of the claims to a jury. Amway Distributors, 323 F.3d at 390.

### B. FMLA Retaliatory Discharge Claim

Consistent with the court's finding that defendant is not entitled to summary judgment based on a lack of notice that plaintiff was requesting FMLA leave, defendant's argument that plaintiff cannot prevail on her retaliatory discharge claim for lack of notice is likewise insufficient to support summary judgment. Defendant's argument that it is beyond reasonable dispute that plaintiff was discharged for the legitimate reasons of insubordination and poor work performance is conclusionary on this record. Further, Supervisor McKinney's November 8, 2001 letter to plaintiff included a perceived deficiency that plaintiff had only worked a full two-week pay period without absences twice in the 21 pay periods preceding November 8, 2001, implicating leave plaintiff had taken after the June 2001 meeting with HR Director Schultz. Plaintiff's April 11, 2005. If plaintiff can prove

16

at trial that these absences were in fact absences to which she was entitled to take FMLA leave, a reasonable jury could conclude that FMLA leave qualifying absences were a "negative factor" applied by defendant in discharging plaintiff. 29 U.S.C. § 825.220(c); Cavin, 346 F.3d at 726. Construing the pleadings and evidence in a light most favorable to plaintiff, whether defendant's proffered reasoning for plaintiff's discharge was merely a pretext for firing plaintiff for attempting to take FMLA leave to which she was entitled must be submitted to the trier of fact of adjudication. Gibson, 336 F.3d at 513; Cavin, 346 F.3d at 726; Pharakhone, 324 F.3d at 408; Amway Distributors, 323 F.3d at 390.

### VII. Public Policy Claim

Defendant has failed to come forward with sufficient legal development or undisputed factual support for granting summary judgment of plaintiff's claim that she was discharged due to her prior involvement with the AFSCME Union. Accordingly, defendant is not entitled to summary judgment of the claim. Amway Distributors, 323 F.3d at 390.

### VIII. Conclusion

Defendant The Guidance Center's motion for summary judgment is hereby DENIED.

SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: June 14, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 14, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk